IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 07-cv-02351-REB-KLM
(Consolidated with 07-cv-02412; 07-cv-02454; 07-cv-02465; and 07-cv-2469)

In Re Crocs, Inc. Securities Litigation

## ORDER RE: MOTIONS TO APPOINT LEAD PLAINTIFF

**Blackburn, J.**

The matters before me are (1) **Motion by Michael Zaleski for Appointment as Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel** [#20], filed January 7, 2008; (2) **Motion of Shahpour Javidzad for Appointment as Lead Plaitniff and Approval of Lead Plaintiff's Selection of Co-Lead Counsel; Memorandum of Points and Authorities in Support Thereof** [#23], filed January 7, 2008; (3) **The Sánchez Group's Motion for Appointment as Lead Plaintiff and for Approval of its Selection of Lead and Liaison Counsel** [#24], filed January 7, 2008; (4) **Motion To Appoint Carol Prochaska as Lead Plaintiff and To Approve Lead Plaintiff's Selection of Co-Lead and Liaison Counsel** [#29], filed January 7, 2008; and (5) **Motion To Appoint National Roofing Industry Pension Plan as Lead Plaintiff and To Approve Lead Plaintiff's Selection of Lead and Liaison Counsel** [#31], filed January 7, 2008. I grant the Sánchez Group's motion and deny the remaining motions.

### I. JURISDICTION

I have jurisdiction of this consolidated putative class action pursuant to 28 U.S.C.

§ 1331 (federal question) and 15 U.S.C. § 78aa (violations of the Securities Exchange Act of 1934).

## II. STANDARD OF REVIEW

The standards for appointment of a lead plaintiff in a class action securities litigation are governed by section 21D(a)(3) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). *See* 15 U.S.C. §§ 78a - 78oo. First, a putative lead plaintiff must have filed with his complaint a sworn certification that complies with the requirements of 15 U.S.C. § 78u-4(a)(2)(A). Second, within twenty days of the filing of the complaint, the plaintiff must publish in a "widely circulated national business-oriented publication or wire service" a notice advising potential members of the class of the pendency of the action and the opportunity to move for appointment as lead plaintiff. *Id.*, § 78u-4(a)(3)(A)(i).[1]

Finally, assuming these prerequisites are met, in an action such as this one where several separate lawsuits have been consolidated (*see* **Order Granting Agreed Motion To (1) Consolidate; (2) Extend Time To Respond to Complaints; and (3) Set Briefing Schedules** ¶¶ 1-4 at 1-2 [#9], filed December 19, 2007), and as soon as practicable after a decision on consolidation has been rendered, *see* 15 U.S.C. § 78u-4(a)(3)(B)(ii), the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *Id.*, § 78u-4(a)(3)(B)(i); *see also id.*,

---

[1] Where, as here, "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause (i)" 15 U.S.C. § 78u-4(a)(3)(A)(iI).

§ 78u-4(a)(3)(B)(ii) (noting that "most adequate plaintiff" standard applies equally to consolidated actions). The statute creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.*, § 78u-4(a)(3)(B)(iii)(I).

The PSLRA gives no guidance as to how a presumptive lead plaintiff's financial interest for purposes of making the determination required by subsection (a)(3)(B)(iii)(I)(bb) should be calculated. **See In re Bausch & Lomb Incorporated Securities Litigation**, 244 F.R.D. 169, 172 (W.D.N.Y. 2007), **as modified on other grounds on denial of reh'g**, 2007 WL 3197318 (W.D.N.Y. Oct. 26, 2007). Courts have used various methods in arriving at loss calculations under this provision. **See, e.g.**, **In re Williams Securities Litigation**, 2002 WL 32153476 at *5 (N.D. Okla. July 8, 2002) (approving use of a 90-day average trading price to compare putative plaintiffs' losses); **In re Ribozyme Pharmaceuticals, Inc. Securities Litigation**, 192 F.R.D. 656, 658 (D. Colo. 2000) (describing "retention value method" of loss valuation as "the most common method for determining financial interest pursuant to the PSLRA"); **In re Olsten Corp. Securities Litigation**, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998) (applying four factors advocated by district court in **Lax v. First Merchants Acceptance Corp.**, 1997 WL 461036 at *5 (N.D. Ill. Aug. 11, 1997)). None of the movants has specified which of

3

these alternative measures they used, nor argued that one is more appropriate than another.  Nevertheless, because none of the movants questions any other's loss valuation calculations on the ground that an improper method has been employed,[2] I rely on the calculations provided without further expatiation of the method by which they were derived.

As for the requirement that the lead plaintiff otherwise satisfy the requirements of Rule 23, only two of the four requirements of Rule 23(a) – typicality and adequacy – impact the analysis of the lead plaintiff issue.  **See In re Ribozyme**, 192 F.R.D. at 658.[3] "Typicality exists where the "injury and the conduct are sufficiently similar." **Id.** Although different plaintiffs may invoke different factual circumstances, typicality is present "so long as the claims of the class representative and class members are based upon the same legal or remedial theory." **Id.** (citation and internal quotation marks omitted).  The requirement of adequacy is satisfied on proof of "(1) the absence of potential conflict between the named plaintiffs and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation." **Id**. at 659.

If these prerequisites are met, the presumption created by the statute may be rebutted only by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that

---

[2] The parties seem to agree also that the "last-in first-out" ("LIFO") standard of valuation, as opposed to the "first-in first-out" ("FIFO") standard, is more appropriate in defining the losses at issue, and court decisions support this notion.  **See In re Bausch & Lomb**, 244 F.R.D. at 173 n.4 (citing cases).

[3] Consideration of the remaining elements of Rule 23(a) is to be deferred until the motion for class certification is filed.  **See in re Ribozyme**, 192 F.R.D. at 658.

4

render such plaintiff incapable of adequately representing the class." 15 U.S.C. 78u-4(a)(3)(B)(iii)(aa) & (bb).

### III.  ANALYSIS

In these consolidated securities litigation actions, plaintiffs have sued defendant Crocs Inc., which manufactures and sells a ubiquitous style of casual footwear, as well as its CEO and CFO, for alleged violations of sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.  They seek to represent a class of plaintiffs who purchased shares in Crocs between July 27, 2007, when Crocs reported favorable financial results for the second fiscal quarter of the year, and October 31, 2007, following the company's announcement of third quarter earnings much less favorable than those previously forecast.  During this period, the price of stock in the company rose from $55.42 per share to more than $74 per share.  After the October 31, 2007, announcement, the price of the stock fell to $47.74 per share.  The lawsuits that make up this consolidated action followed.[4]  A notice in compliance with 15 U.S.C. § 78u-4(a)(3)(A)(i) was published at www.businesswire.com within the time required by law. (*See* **Exhibits to The Sánchez Group's Motion for Appointment as Lead Plaintiff and for Approval of its Selection of Lead and Liaison Counsel**, Exh. D [#26], filed January 7, 2008.)  In addition, all parties have submitted the certifications required by 15 U.S.C. § 78u-4(a)(2)(A)(i) - (v).

---

[4] Five lawsuits were consolidated under the current case caption: (1) **Dhingra v. Crocs, Inc. et al.**, Civil Action No. 07-cv-02351-REB-KLM; (2) **Muller v. Crocs, Inc. et al.**, Civil Action No. 07-cv-02412-MSK; (3) **Swanson v. Crocs, Inc. et al.**, Civil Action No. 07-cv-02454-EWN; (4) **Hutchinson v. Crocs, Inc. et al.**, 07-cv-02465-WYD; and (5) **Stewart v. Crocs, Inc. et al.**, Civil Action No. 07-cv-02469-DME.

Of the original five movants seeking appointment as lead plaintiff, one, National Roofing Industry Pension Plan, has conceded that it does not satisfy the "largest financial interest" standard. (*See* **National Roofing Industry Pension Plan's Response to All Other Motions for Appointment as Lead Plaintiff** at 1-2 [#36], filed January 28, 2008.) Its motion, therefore, will be denied. Defendants take no position as to who should be appointed lead plaintiff. (*See* **Defendants' Response to Motions for Appointment as Lead Plaintiff** at 1 [#37], filed January 28, 2008.)

Of the four movants that remain for consideration, the Sánchez Group[5] clearly has the largest financial interest in the litigation, having sustained some $34.5 million in losses as a result of the events underlying these lawsuits. Thus, it is the presumptive most adequate plaintiff. The other movants counter that the Sánchez Group is not a proper class representative because the vast majority of its losses were in "contracts for difference" ("CFDs"). They claim that CFDs are not securities under the U.S. securities laws, and suggest that they may, in fact, be illegal futures contracts. Moreover, they assert that the Sánchez Group is subject to unique defenses that make it atypical and, therefore, inappropriate as the lead plaintiff.

I am not persuaded. The term "security," as defined by the Exchange Act, is very broad, encompassing a wide range of financial instruments. *See* 15 U.S.C. §

---

[5] The PSLRA specifically contemplates that a "group of persons" may serve as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This provision allows a small group of related investors to consolidate their individual losses in seeking designation as lead plaintiff. *See In re Ribozyme*, 192 F.R.D. at 659-60. *But see Freudenberg v. E*Trade Financial Corp.*, 2008 WL 2876373 at *4 (S.D.N.Y. July 16, 2008) (noting that court should reject a movant group if it is "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff,' which can then select the equally artificial grouping of counsel as 'lead counsel'") (citation and internal quotation marks omitted).

78c(a)(10). CFDs, although apparently not common in the United States, are widely used outside this country. As cogently described by the only other court to address their status in relation to more traditional securities:

> CFD purchasers acquire the future price movement of the underlying company's common stock (positive or negative) without taking formal ownership of the underlying shares. Unlike calls and puts, which trade in tandem with, but not at the same price as, the underlying publicly traded common stock, the purchase and sale prices of CFDs are alleged to be identical to the prices quoted for shares of the underlying company's common stock on the public securities exchange. In advance of pricing the CFDs, actual matching shares of the underlying common stock are purchased or sold by the broker on the public securities exchange on which the common stock normally trades. The prices paid or received by the broker for those corresponding shares of common stock are the prices set for the CFDs representing those shares and charged to, or paid by, the customer. Because identical matched transactions occur in shares of the actual common stock immediately before the purchase or sale of the CFDs, any influence on the public market price of the underlying securities is also reflected in the price of the CFDs. CFDs have no fixed expiration date, CFD holders receive the benefit of any dividends paid on the underlying shares, and the CFD may include voting rights on the underlying shares.

*Freudenberg v. E*Trade Financial Corp.*, 2008 WL 2876373 at *7 (S.D.N.Y. July 16, 2008).[6] (*See also* **Memorandum of Law in Opposition to Competing Motions for Appointment as Lead Plaintiff** [#41], filed January 28, 2008, App., Brower Decl. Exh. A.) I agree with the thoughtful analysis of *Freudenberg* that CFDs are securities and find nothing to substantiate the suggestion that they would be considered illegal futures contracts pursuant to the securities laws of this country.

---

[6] CFDs have a domestic analog in American Depository Receipts, financial instruments "used in the U.S. to invest in non-U.S. companies and allow Americans to acquire an interest in foreign equity securities without taking ownership of the underlying foreign shares." *Freudenberg*, 2008 WL 2876373 at *6.

Further, the competing movants have not proved that the Sánchez Group is subject to unique defenses that may render them "inadequate because they are likely to usurp a significant portion of the litigant's time and energy." ***Doll v. Chicago Title Insurance Co.***, 246 F.R.D. 683, 687 (D. Kan. 2007) (citation and internal quotation marks omitted). All the arguments pressed in this regard – that the Sánchez Group lacks standing because the putative class is defined as purchasers of securities of Crocs, Inc., that the Sánchez Group a net seller of securities, that it sold all its common stock prior to the date of the corrective disclosure, and that its claims may be subject to unique due process challenges[7] – are ultimately premised on the erroneous assumption that CFDs are not securities.

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." The Sánchez Group has demonstrated that its putative choice for lead and liaison counsel are "qualified, experienced and able to vigorously conduct the proposed litigation." ***In re Ribozyme***, 192 F.R.D. at 659. (**See Exhibits to The Sánchez Group's Motion for Appointment as Lead Plaintiff and for Approval of its Selection of Lead and Liaison Counsel**, Exhs. G & H [#26], filed January 7, 2008). I, therefore, approve Brower Piven as lead counsel and Wolf, Slatkin & Madison, P.C. as liaison counsel.

---

[7] Defendants request that certain conditions be imposed on the conduct of this litigation if the Sánchez Group is appointed as lead plaintiff to ease the allegedly "unique issues and additional burdens for the Defendants as the Defendants and the Court seek to apply the Federal Rules of Civil Procedure to a party outside the United States." (**Defendants' Response to Motions for Appointment as Lead Plaintiff** [#37], filed January 28, 2008.) Procedurally, this request is brought improperly. ***See*** **D.C.COLO.LCivR** 7.1C ("A motion shall not be included in a response or reply to the original motion. A motion shall be made in a separate paper."). Therefore, I do not address it.

**THEREFORE, IT IS ORDERED** as follows:

1. That **The Sánchez Group's Motion for Appointment as Lead Plaintiff and for Approval of its Selection of Lead and Liaison Counsel** [#24], filed January 7, 2008, is **GRANTED**;

2. That the Sánchez Group, consisting of Antonio Pedrera Sánchez and Fernando Pedrera Sánchez, is **APPOINTED** as lead plaintiff for the putative class;

3. That the firm of Brower Piven is **APPROVED** as lead counsel;

4. That the firm of Wolf, Slatkin & Madison, P.C., is **APPROVED** as liaison counsel;

5. That the **Motion by Michael Zaleski for Appointment as Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel** [#20], filed January 7, 2008, is **DENIED**;

6. That the **Motion of Shahpour Javidzad for Appointment as Lead Plaitniff and Approval of Lead Plaintiff's Selection of Co-Lead Counsel; Memorandum of Points and Authorities in Support Thereof** [#23], filed January 7, 2008, is **DENIED**;

7. That the **Motion To Appoint Carol Prochaska as Lead Plaintiff and To Approve Lead Plaintiff's Selection of Co-Lead and Liaison Counsel** [#29], filed January 7, 2008, is **DENIED**; and

8. That the **Motion To Appoint National Roofing Industry Pension Plan as Lead Plaintiff and To Approve Lead Plaintiff's Selection of Lead and Liaison Counsel** [#31], filed January 7, 2008, is **DENIED**.

Dated September 17, 2008, at Denver, Colorado.

BY THE COURT:

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**