IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 07-cv-02351-PAB-KLM
(Consolidated with 07-cv-02412; 07-cv-02454; 07-cv-02465; and 07-cv-02469)

In re Crocs, Inc. Securities Litigation

---

### ORDER

---

This matter is before the Court on Plaintiffs' Motion for Preliminary Approval of Proposed Partial Class Settlement [Docket No. 195]. This Court has subject matter jurisdiction pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa *et seq.*, and 28 U.S.C. § 1331.

## I. BACKGROUND

On or after November 8, 2007, five purported class actions were filed in this District alleging that Crocs, Inc., four of its executive officers, two members of its senior management, four members of its board of directors (collectively "Crocs"), and Crocs' auditor and principal accounting firm, Deloitte & Touche, LLP ("Deloitte"), violated the Exchange Act and rules promulgated by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-1 *et seq. See Dhingra v. Crocs, Inc.*, No. 07-cv-2351-REB; *Muller v. Crocs, Inc.,* No. 07-cv-02412-MSK; *Swanson v. Crocs, Inc.*, No. 07-cv-02454-EWN; *Hutchinson v. Crocs, Inc.*, No. 07-cv-02465-WYD; and *Stewart v. Crocs, Inc.*, No. 07-cv-02469-DME. On December 19, 2007, the Court consolidated the five actions into the present case. Docket No. 9.

On September 17, 2008, the Court appointed Antonio Pedrera Sanchez and Fernando Pedrera Sanchez (the "Sanchez Group") as Lead Plaintiff.[1]  *See* Docket No. 67.  After its appointment as Lead Plaintiff, on December 31, 2008, the Sanchez Group filed a consolidated class action complaint [Docket No. 87] on behalf of a putative class comprised of individuals who purchased Crocs securities between April 2, 2007 and April 14, 2008, inclusive.  Docket No. 87 at 1.  The amended complaint added Harvey Babbitt and Daniel J. Lundberg as named plaintiffs in the putative class action.  *Id.*  In the amended complaint, plaintiffs alleged that Crocs made materially false and misleading public statements about its inventory and the systems Crocs used to manage its inventory, which led to plaintiffs' damages as the price of Crocs' securities decreased once Crocs made corrective disclosures.  *See, e.g.,* Docket No. 87 at 36-123, ¶¶ 113-169.

On March 19, 2009, Crocs and Deloitte filed motions to dismiss.  Docket Nos. 103, 107, 108.  On February 28, 2011, the Court dismissed the consolidated complaint with prejudice for failure to state a claim upon which relief may be granted.  Docket No. 167.  On March 18, 2011, plaintiffs appealed the Court's order dismissing the case.  Docket No. 169.[2]  The parties completed appellate briefing on December 29, 2011.

---

[1]The Court appointed the Sanchez Group as Lead Plaintiff because it had the "largest financial interest in the litigation."  Docket No. 67 at 6.  The Court rejected arguments raised by the other plaintiffs challenging the Sanchez Group's ability to represent the putative class because it found that contracts for difference ("CFDs") qualify as securities under the Exchange Act and, therefore, the Sanchez Group was not an atypical plaintiff and was not subject to unique defenses.  *Id.* at 6-9.

[2] Plaintiffs' appeal is captioned *Sanchez v. Crocs, Inc., et al.*, Case No. 11-1116.

While the case was on appeal, the parties engaged in settlement negotiations with Kyle Ann Schultz, the Tenth Circuit Mediator. In addition, the parties participated in mediation in front of a retired United States District Judge.[3] Docket No. 195 at 4. Following months of supervised mediation, Lead Plaintiff and Crocs (the "Settling Parties") reached a settlement agreement, the final terms of which were finalized over a two month period during which the parties discussed their respective claims, defenses, as well as key factual issues in the litigation.[4] *Id.* Upon reaching a settlement agreement, the Settling Parties notified the Tenth Circuit and requested that the Tenth Circuit remand the case. *Id.* On April 9, 2012, the Tenth Circuit remanded the case "on a limited basis" so that this Court could "consider fully the parties' proposed class settlement." Docket No. 187 at 2-3.

On May 14, 2012, the Settling Parties filed the present motion requesting that the Court: (1) preliminarily approve the terms of the partial Settlement Agreement as set forth in the Stipulation, Docket No. 194; (2) certify a Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3); (3) approve and direct notice to the Settlement Class, Docket Nos. 194-1, 194-2; and (4) set deadlines for interested parties to file objections and schedule a fairness hearing. *See* Docket No. 195 at 1.

On June 4, 2012, National Roofing Industry Pension Plan ("National Roofing"), a group of plaintiffs seeking appointment as Lead Plaintiff, filed objections to the proposed

---

[3]The Honorable Layn R. Phillips, former United States District Judge for the Western District of Oklahoma.

[4]Deloitte & Touche, LLP is not a party to the proposed settlement agreement and takes no position on the requested relief. Docket No. 195 at 1, n.2.

partial Settlement Agreement.[5]   Docket No. 197.   National Roofing raises three

arguments for why this Court should reject the Settling Parties' proposed partial

Settlement Agreement: (1) the Sanchez Group lacks standing to function as the Lead

Plaintiff in light of the Supreme Court's ruling in *Morrison v. Nat'l Australia Bank Ltd.*, ---

U.S. ----, 130 S.Ct. 2869, 2883 (2010); (2) the timing of the Settlement Agreement

raises serious doubts about the fairness of the class members' anticipated recovery;

and (3) the Settlement Agreement is not fair, reasonable, or adequate because an

estimated net recovery of $6.4 million for the Settlement Class is less than 15% of the

Sanchez Group's alleged damages.   Docket No. 197 1-5; *see, e.g.,* Docket No. 26-3.

Although National Roofing argues that the Sanchez Group does not have Article

III standing to litigate its claims against Crocs because its members purchased CFDs

that are not traded on United States stock exchanges, Docket No. 197 at 1-5, the

Supreme Court in *Morrison* clarified that whether § 10(b) of the Exchange Act applied

extraterritorially is not a question of subject matter jurisdiction, but rather goes to the

merits of a case.   130 S.Ct. at 2877; *see Absolute Activist Value Master Fund, Ltd. v.

Ficeto*, 677 F.3d 60, 67 (2d Cir. 2012) (noting that "the district court erred in dismissing

the case for lack of subject matter jurisdiction because *Morrison* makes clear that

whether § 10(b) applies to certain conduct is a 'merits' question").   Thus, although

---

[5]On January 7, 2008, National Roofing moved for appointment as Lead Plaintiff, Docket No. 31, which the Court denied.   Docket No. 67.   After the Court's denial, National Roofing moved for reconsideration, Docket No. 142, which the Court denied as moot once the Court dismissed the Lead Plaintiff's amended complaint.   Docket No. 167.   National Roofing appealed the Court's denial of its motion for reconsideration, which appeal is captioned *National Roofing Industry Pension Plan v. Michael C. Margolis et al.*, Case No. 11-1142.

National Roofing argues that the Sanchez Group's standing is a threshold issue, the Court finds that National Roofing's objections are properly addressed within the Rule 23 class certification factors. *Cf. NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,* 693 F.3d 145, 160-62 (2d Cir. 2012) (noting that there is "tension" in the case law regarding whether "variation" between (1) a named plaintiff's claims and (2) the claims of putative class members "is a matter of Article III standing . . . or whether it goes to the propriety of class certification pursuant to [Fed. R. Civ. P. 23(a)] . . ." and finding that, "in a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he 'personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant,' and (2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants") (internal citations omitted).

## II.  STANDARD FOR PRELIMINARY CERTIFICATION OF A SETTLEMENT CLASS

Approval of a class action settlement takes place in two stages.  In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement or opt out of the settlement.  In the second stage, after notice is given to the putative class, the Court holds a fairness hearing at which it will address (1) any timely objections to the treatment of this litigation as a class action, and (2) any objections to the fairness, reasonableness, or adequacy of the settlement terms.  Fed. R. Civ. P. 23(e)(2); *see, e.g., McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

"Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011).  A proposed settlement of a class action should therefore be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives.  *See In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012).  The standards for preliminary approval of a settlement class are not as stringent as those applied for final approval.  *Id.*

Although the standards for preliminary approval of a class action settlement are not as stringent as they are in the second stage, the standards used in the second stage inform the Court's preliminary inquiry.  Therefore, it is appropriate to review those standards.

District courts have broad discretion when deciding whether to certify a putative class.  *Wal-Mart Stores, Inc. v. Dukes*, --- U.S. ----, 131 S.Ct. 2541, 2551 (2011); *Shook v. El Paso Cnty.*, 386 F.3d 963, 967 (10th Cir. 2004).  A district court may only certify a settlement class if it is "satisfied, after a rigorous analysis" that the requirements of Rule 23 are met and frequently a district court's "'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."  *Dukes*, 131 S.Ct. at 2551; *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (holding that "the obligation to make [Rule 23] determinations is not lessened by overlap between a Rule

23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement").

As the party seeking class certification, plaintiffs have the burden to prove that the requirements of Rule 23 are satisfied. *Shook*, 386 F.3d at 968. Plaintiffs must first demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d. Cir. 2011).

After meeting these requirements, plaintiffs must demonstrate that the proposed class action fits within one of the categories described in Fed. R. Civ. P. 23(b). Here, plaintiffs ask the Court to certify a settlement class under Rule 23(b)(3). Docket No. 195 at 13. Under that provision, plaintiffs must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining predominance and superiority under Rule 23(b)(3), the Court considers the following factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). To

7

certify a settlement class, the Court need not inquire whether the case, if tried, would

present difficult management problems under Rule 23(b)(3)(D).  *Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 620 (1997).  However, all of the other Rule 23 requirements

apply and demand heightened attention in the settlement context because the Court

generally lacks an opportunity to adjust the class as the case unfolds.  *Id.*  If the

proposed settlement class satisfies the requirements of Rules 23(a) and (b), then the

Court must separately evaluate whether the settlement agreement is "fair, reasonable,

and adequate" under Rule 23(e).[6]  Fed. R. Civ. P. 23(e)(2);  *In re Am. Int'l Grp., Inc.*

*Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012).

## III.  ANALYSIS OF PROPOSED SETTLEMENT

### A.  Overview of the Partial Settlement Agreement

The Settling Parties seek certification of a Settlement Class consisting of:

> all Persons who purchased or otherwise acquired publicly traded
> securities of Crocs between April 2, 2007 and April 14, 2008, inclusive.
> Excluded from the Settlement Class are Defendants, their officers and
> directors during the Settlement Class Period, the members of their
> immediate families, and their respective representatives, heirs,
> successors, and assigns, as well as any entity in which Defendants have
> or had a controlling interest.  Also excluded from the Settlement Class are
> those Persons who otherwise satisfy the above requirements for
> membership in the Settlement Class, but who timely and validly request
> exclusion from the Settlement Class pursuant to the Notice to be sent to
> Settlement Class Members.

Docket No. 194 at 11, ¶ 1.32; Docket No. 195-2 at 2.  There are no subclasses to the

Settlement Agreement.

---

[6]The Supreme Court in *Amchem* cautioned that the fairness inquiry under Rule
23(e) does not supplant the Rule 23(a) and (b) requirements, but instead "function[s] as
an additional requirement."  521 U.S. at 621.

In exchange for full release of Settlement Class claims relating to the underlying lawsuit, Crocs will pay the Settlement Amount, $10,000,000.00, into a Settlement Fund. Docket No. 194 at 11, ¶¶ 1.31, 1.35.  The Settlement Amount will be provided by Crocs' Directors and Officers' insurers ("D&O Insurers").  Docket No. 194 at 6, ¶ 1.11.  Lead Plaintiff may use up to $250,000.00 from the Settlement Fund for costs and expenses reasonably, necessarily, and actually incurred to provide the Settlement Class with notice.  Docket No. 194 at 16-17, ¶ 3.7.  Depending on the number of eligible Class Members that participate in the settlement, the estimated average recovery will be approximately $0.13 per share of Crocs' common stock before deduction of Court-approved fees and expenses.  Docket No. 195-2 at 2.

After deducting attorneys' fees,[7] costs of notice, expenses, and costs for claims administration, the Settlement Fund will be allocated pro rata among the Settlement Class based on the following factors: (1) the date class members purchased securities; (2) the type of security purchased; (3) the first-in first-out ("FIFO") method of recognized loss;[8] and (4) the Recognized Claim formula.[9]  Docket No. 195-2 at 11-16.

---

[7]The Court-approved attorneys' fees for lead counsel shall not exceed 33 1/3% of the Settlement Fund.  Docket No. 194 at 27.

[8]For Settlement Class Members who held Crocs securities at the beginning of the Settlement Class Period or made multiple purchases or sales during the Settlement Class Period, the first-in, first-out ("FIFO") method will be applied.  Under FIFO, sales of securities during the Settlement Class Period will be matched, in chronological order, first against securities held at the beginning of the Settlement Class Period.  The remaining sales of securities during the Settlement Class Period will then be matched, in chronological order, against securities purchased during the Settlement Class Period.  Docket No. 195-2 at 14.

[9]The Recognized Claim formula is not an estimate of the amount that a Settlement Class Member might have been able to recover after a trial; nor is it an

To recover damages as a member of the Settlement Class, a class member must return a valid proof of claim form.  Docket No. 195-4.  The class members will also have the ability to opt out of the Settlement Agreement or file timely objections.  Docket No. 195-2 at 17.  Any settlement class member who fails to submit a timely proof of claim form will not receive payment pursuant to the Settlement Agreement.  Moreover, a qualifying class member will not receive a distribution of the Settlement Fund if the class member is entitled to recover less than $10.00.  Docket No. 195-2 at 15.

The Claims Administrator will calculate the claims submitted by the settlement class members and oversee distribution of the Settlement Fund.  Docket No. 194 at 24, ¶ 6.1.  If there is a balance remaining in the Settlement Fund after all claims, fees, costs, and taxes are paid, the remaining balance shall be reallocated and distributed among the class members who can receive at least $10.00 from such re-distribution.  Docket No. 194 at 26, ¶ 6.2(c).  Thereafter, any remaining balance shall be donated – subject to Court approval – to St. Jude Children's Research Hospital.  *Id.*  No part of the Settlement Fund shall revert to defendants.[10]  *Id.*

---

estimate of the amount that will be paid to Authorized Claimants pursuant to the Settlement.  Rather, the Recognized Claim formula is the basis upon which the Net Settlement Fund will be proportionately allocated to the Authorized Claimants based upon several factors, including when a Settlement Class Member purchased Crocs securities during the Class Period, when or if a Settlement Class Member sold those Crocs securities, and Plaintiffs' Counsel's estimation, based on consultation with Plaintiffs' experts, of the relative strengths and weaknesses of the Settlement Class claims and the impact of the alleged misconduct by the Settling Defendants on the price of Crocs' securities at various times during the Settlement Class Period.  Docket No. 195-2 at 15.

[10]Such a distribution is known as a *cy pres* distribution.  *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 172 (3d Cir. 2013).  *Cy pres* distributions are usually awarded when excess settlement funds remain after class members have received

### B.  Numerosity

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action because the alternative of joinder is impracticable.  Fed. R. Civ. P. 23(a)(1).  Some courts have held that numerosity may be presumed at a certain number; however, the Tenth Circuit has never adopted a minimum presumption. *Trevizo v. Adams*, 455 F.3d 1155, 162 (10th Cir. 2006) (upholding district court ruling that a group of eighty-four class members was insufficient to warrant class certification). The Settling Parties do not provide an estimate of the number of individuals that qualify for the relevant class; rather, they state that "Crocs securities were purchased by hundreds, if not thousands, of persons" during the Class Period.  Docket No. 195 at 12. National Roofing does not object to this statement.  Thus, in light of the Settling Parties' representation that the Settlement Class consists of thousands of individuals, who likely have suffered relatively small individual damages, the Court finds that the proposed Settlement Class satisfies Rule 23(a)(1)'s numerosity requirement.

### C.  Commonality

Rule 23(a) requires a district court to ensure that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Factual differences in the claims of the individual class members should not result in the denial of class certification where common questions of law exist.  *D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010) ("Factual differences between class members' claims do not defeat

---

distribution of the settlement agreement.  *Id.*  Several courts of appeals have held that a district court does not abuse its discretion by including a *cy pres* component in a settlement agreement.  *Id.* (listing cases).

certification where common questions of law exist") (citation omitted).  The commonality requirement asks only that the Lead Plaintiff demonstrate that the class members have "suffered the same injury" such that the claims of the class are based on a common contention and that the determination of the truth or falsity of this contention "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2551.  In other words, plaintiffs must have a common question of fact or law that will connect many individual claims to the relief sought by the class. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).  Even one common issue of law or fact will suffice to establish Rule 23's commonality requirement. *Dukes*, 131 S.Ct. at 2556.

In this case, plaintiffs allege that defendants recklessly or knowingly made material misrepresentations or omissions regarding Crocs' inventory that artificially inflated the price of Crocs' securities and led to the Settlement Class' damages.  Docket No. 195 at 12.  These issues of fact and law are common to all plaintiffs' claims arising under the Exchange Act.  Thus, although the alleged material misrepresentations and omissions may have impacted class members differently, whether these material omissions and misrepresentations occurred is a factual and legal question that is common to the entire class and is capable of class wide resolution. *Dukes*, 131 S.Ct. at 2556.  Accordingly, the Court finds that the proposed Settlement Class satisfies the commonality requirement.  Fed. R. Civ. P. 23(a)(2).

### D.   Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, n. 13 (1982).  Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  The interests and claims of the lead plaintiff and the class members need not be identical to satisfy typicality and, provided the claims of the lead plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality.  *Devaughn*, 594 F.3d at 1199.

Nevertheless, "it is well-established that a proposed class representative is not 'typical' under Rule 23(a)(3) if 'the representative is subject to a unique defense that is likely to become to become a major focus of the litigation.'"  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir. 2012).

Although not presented as such, National Roofing argues that the Sanchez Group cannot satisfy Rule 23's typicality requirement because it is subject to a unique defense – lack of standing.  Docket No. 197 at 5-7.  Specifically, National Roofing argues that the Sanchez Group is not a member of the relevant class because it did not purchase securities listed on a United States domestic exchange, but rather purchased

contracts for difference ("CFDs") on a foreign exchange.[11]  *Id.* at 6-7.  In addition,

National Roofing claims that, because the Sanchez Group lacks standing to assert

claims for its purchase of CFDs, it cannot manufacture standing by joining plaintiffs who

purchased Crocs' common stock to the litigation.  *Id.* at 6-7.

Although the Sanchez Group's purchase of CFDs make it subject to a defense

that is atypical of the Settlement Class, the lack of standing defense alone is not

sufficient to defeat class certification.[12]  The reason why a lead plaintiff's unique defense

---

[11]Between July 7, 2007 and November 12, 2007, the Sanchez Group purchased CFDs in Denmark through Saxo Bank, a Danish bank.  Docket No. 41-3 at 2-3, ¶¶ 1-5. CFDs are private contracts between two parties who bet on whether the value of some underlying instrument will go up or down.  Docket No. 148-2 at 6, ¶ 10-11.  As such, CFDs fall into the broad class of derivatives because their value is "derived" from the price of some underlying instrument, typically the common stock of a company sold on U.S. stock exchanges.  *Id.*  CFDs are legally sanctioned securities outside of the U.S., but not in the U.S.  *Id.*  The Sanchez Group's purchase of CFDs occurred as follows: first, the Sanchez Group placed an order for CFDs with Saxo Bank.  *See* Docket No. 148-2 at 6-7, ¶¶ 11-13.  Each CFD ordered by the Sanchez Group derived its value from Crocs' common stock and reflected the current market price of such stock.  *Id.* Once the Sanchez Group ordered CFDs from Saxo Bank, Saxo Bank placed a request with Lehman Brothers Holdings, Inc. ("Lehman Brothers") to purchase the identical number of shares of Crocs' common stock ordered by the Sanchez Group in CFDs.  *Id.* After Lehman Brothers completed the purchase of Crocs' common stock, Saxo Bank sold CFDs to the Sanchez Group at the identical price Lehman Brothers paid for the underlying Crocs' common stock.  *Id.*  As a result of this transaction, the Sanchez Group received CFDs, but did not receive any form of ownership in Crocs' common stock.  *Id.*; *see also Freudenberg v. E*Trade Fin. Corp.*, 2008 WL 2876373, at *7 (S.D.N.Y. July 16, 2008) (generally describing a CFD transaction).

[12]In *Morrison*, the Supreme Court held that § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), does not apply extraterritorially.  130 S.Ct. at 2878.  Instead, the Supreme Court held that "[s]ection 10(b) reaches the use of a manipulative or deceptive device or contrivance only in connection with the purchase or sale of a security *listed on an American stock exchange*, and the purchase or sale of any other security *in the United States*."  *Id.* at 2888 (emphasis added).  Here, it is undisputed that CFDs qualify as securities.  *See, e.g., S.E.C. v. Compania Internacional Financiera, S.A.*, 2011 WL 3251813, at *6-7 (S.D.N.Y. July 29, 2011); *In re Optimal U.S. Litig.*, 865 F. Supp. 2d 451, 453 (S.D.N.Y. 2012).  Moreover, it is undisputed that the Sanchez Group

is detrimental to the class is that the lead plaintiff "might devote time and effort to the

defense at the expense of issues that are common and controlling for the class." *Beck*

*v. Maximus, Inc.*, 457 F.3d 291, 297 (3d Cir. 2006). National Roofing has not shown

that the interests of the Sanchez Group are antagonistic to the interests of the

Settlement Class. Instead, it appears on preliminary review as though the Sanchez

Group's interests are in line with those of the Settlement Class given that it seems to

have sought to maximize recovery for all those who claim they suffered a loss because

of Crocs' alleged misrepresentations and omissions. Moreover, the Sanchez Group is

typical of the Settlement Class in that it is subject to a common risk, namely, that the

Tenth Circuit would affirm this Court's order dismissing plaintiffs' claims.

Because the Court finds that the Sanchez Group plausibly alleges that it suffered

an injury as a result of Crocs' misrepresentations and that such conduct implicates the

same set of concerns as the conduct alleged to have injured other members of the

class, the Court finds that the fact that the Sanchez Group is subject to a unique

defense does not appear, at this preliminary stage of review, to call into question

whether the interests of other class members have been adequately protected. *See In*

*re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009) ("A common

purchased CFDs outside of the United States. *See* Docket No. 41-3. Thus, the only
question centers on whether the Sanchez Group can show that the CFDs it purchased
from Saxo Bank qualify as a "purchase or sale of a security *listed on an American stock
exchange*." *Morrison*, 130 S.Ct. at 2888 (emphasis added). There is no need for the
Court to resolve this issue now. While *Morrison* did not decide the issue, it clarified that
standing questions of this type implicate the merits of the dispute. *Id.* at 2877. The
Settling Parties could therefore appropriately take this issue into account in determining
the costs and benefits of settlement. The question here is whether the fact that the
Sanchez Group is subject to a statutory standing defense compromises the ability of the
Sanchez Group to represent adequately the interests of the absent class members.

thread running through the various components of typicality—the requirements of similarity of legal claims, factual similarity, and absence of defenses unique to the representative—is the interest in ensuring that the class representative's interests and incentives will be generally aligned with those of the class as a whole") (citation omitted).

Similarly, the Court finds that National Roofing's second argument regarding the Sanchez Group is insufficient to defeat preliminary settlement class certification. National Roofing asserts that, because the Sanchez Group is atypical in that it did not purchase Crocs' common stock during the relevant Class Period, the Sanchez Group cannot cure its lack of statutory standing through the appointment of two named plaintiffs, Messrs. Babbitt and Lundberg, who purchased Crocs' common stock during the Class Period, but were not subject to lead plaintiff scrutiny under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4 *et seq.* Docket No. 197 at 8-9. In other words, National Roofing claims that the Sanchez Group cannot manufacture standing by adding named plaintiffs with standing. *Id.*

The PSLRA, among other things, requires that a district court appoint a person or persons to serve as lead plaintiff of a putative class before the court proceeds with the adjudication of a private lawsuit under the federal securities laws. *See* 15 U.S.C. § 78u-4(a)(3). However, "[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004). Rather, "because the PSLRA mandates that courts choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not

16

have standing to sue on every claim." *Id*.  In such cases, district courts allow putative

class suits to proceed so long as there is at least one named plaintiff with standing to

sue as to every claim alleged.  *See Police & Fire Ret. Sys. of City of Detroit v. IndyMac

MBS, Inc.*, 721 F.3d 95, 112 (2d Cir. 2013).

Because it is undisputed that Messrs. Babbitt and Lundberg are members of the

proposed Settlement Class, Docket No. 197 at 9; Docket No. 198 at 3, the Court finds

National Roofing's second argument unpersuasive.  Because the PSLRA does not

prevent a lead plaintiff from joining named plaintiffs to an action, *Hevesi*, 366 F.3d at 83,

the Sanchez Group has not manufactured standing and, even assuming that the

Sanchez Group is subject to the lack of standing defense, Messrs. Babbitt and

Lundberg may represent the interests of the Settlement Class.[13]

Accordingly, because there is no evidence that the lack of standing defense

made the Sanchez Group's interests antagonistic to those of the class and because the

addition of Messrs. Babbitt and Lundberg generally cures the standing issue, the Court

finds that the presence of the Sanchez Group's unique defense is not enough to defeat

the typicality requirement.  *See In re Am. Int'l Grp., Inc., Sec. Litig.*, 689 F.3d at 243-44

(noting that "Defendants in class action suits are entitled to settle claims pending

against them on a class-wide basis even if a court believes that those claims may be

meritless," provided that the class is properly certified under Rules 23(a) and (b) and the

---

[13]National Roofing also argues that the Sanchez Group is not a class member
because it sold all of its Crocs' common stock before Crocs made corrective
disclosures.  Docket No. 197 at 6-7.  Because the addition of Messrs. Babbitt and
Lundberg to this action cures concerns regarding purchases of Crocs' common stock,
the Court will not address this argument because it is not necessary to the resolution of
the motion.

settlement is fair under Rule 23(e)); *Sullivan v. DB Invests., Inc.*, 667 F.3d 273, 310 (3d Cir. 2011) (noting that mandating "that a class include only those alleging 'colorable' claims, [ ] would effectively rule out the ability of a defendant to achieve 'global peace' by obtaining releases from all those who might wish to assert claims").

### E.   Adequacy of Representation

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement protects the due process interests of unnamed class members who are bound by any judgment unless they opt out.  *See Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 379 n.5 (1996).

As the Supreme Court has noted, the "adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem*, 521 U.S. at 626 n. 20.  As such, the adequacy of representation "inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* at 625.  Thus, to be an adequate class representative, the "representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26.

The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v.*

*Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002) (citation omitted).   Adequate representation depends on, among other factors, an absence of antagonism between the representatives and absentees, and a sharing of interest between representatives and absentees.   *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

With regard to the first adequacy factor, the Court finds that the interests of the class are fairly and adequately protected by Lead Plaintiff.   There is nothing in the record to show how the Sanchez Group's susceptibility to the standing defense raises a conflict of interest between itself and the rest of the class.   Moreover, there is nothing in the Settlement Agreement that raises obvious concerns regarding interclass conflicts. *See Amchem*, 521 U.S. at 611-12 (noting interclass conflict between the exposure-only asbestos plaintiffs and those already afflicted with asbestos related disease).   There is also no evidence that one set of class members is at risk of benefitting from the settlement to the detriment of another set of class members.   *See Arkalon Grazing Ass'n v. Chesapeake Operating, Inc.*, 275 F.R.D. 325, 330 (D. Kan. 2011) (noting that a fundamental conflict exists between the class members and the Lead Plaintiff when some class members are at risk of losing benefits as the Lead Plaintiff chooses benefits that protect one set of class members over another).   Accordingly, the Court finds at this preliminary stage that Lead Plaintiff is able to control the litigation and to protect the interests of the class as a whole.   Class members will be able to challenge this issue at the fairness hearing if they believe otherwise.

With regard to the second adequacy factor, class counsel here are experienced in complex class action litigation.   *See* Docket No. 26-5; Docket No. 26-4 at 53-60.   In addition, National Roofing does not question the competence of class counsel or class

counsel's ability to prosecute this action and, to the extent it does, it will be able to challenge this issue at the fairness hearing.  Accordingly, because Lead Plaintiff does not have a conflict of interest with the rest of the class and class counsel has preliminarily shown that it can vigorously litigate on behalf of the class, the Court finds that plaintiffs have satisfied Rule 23(a)(4)'s requirements.  *Rutter*, 314 F.3d at 1188.

### F.   Rule 23(b)(3)

To qualify for certification under Rule 23(b)(3), class questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy."  *Amchem*, 521 U.S. at 615.  Rule 23(b)(3) states that courts should consider the following factors when certifying a class: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  *See* Fed. R. Civ. P. 23(b)(3)(A)-(D).

Parallel with Rule 23(a)(2)'s commonality element, Rule 23(b)(3)'s predominance requirement imposes an obligation upon district courts to ensure that issues common to the class predominate over those affecting only individual class members.  *Sullivan*, 667 F.3d at 297.  However, the predominance criterion is "far more demanding" than Rule 23(a)(2)'s commonality requirement.  *Amchem*, 521 U.S. at 624.  Rule 23(b)(3)'s purpose is to "ensure[ ] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to

20

persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007).  Thus, Rule 23(b)(3)'s predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation based on "questions that preexist any settlement." *Amchem*, 521 U.S. at 623.  While predominance may be difficult to demonstrate in mass tort cases in which the "individual stakes are high and disparities among class members great," it is a "test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Id.* at 625.

In this case, Lead Plaintiff, as well as absent class members, seek compensation for defendants' alleged material misrepresentations and omissions regarding Crocs' inventory and management systems.  First, because the class claims are brought pursuant to federal law, there are no issues concerning variations with state law. Second, because the common questions of fact and law depend entirely upon the conduct of defendants, these questions predominate as they are unaffected by the particularized conduct of individual class members.  For example, the common legal questions necessary to establish liability in this case center around whether defendants made material misrepresentations or omissions in violation of securities laws.  Similarly, the common questions of fact involve when defendants made the alleged material representations, whether defendants made the alleged misrepresentations with the requisite scienter, and whether these alleged misrepresentations caused the class damages.  Thus, because the answers to questions regarding defendants' alleged misconduct and the harm caused by such misconduct are common to all class

21

members and inform the resolution of the litigation but for the settlement, the Court finds that common issues of law and fact predominate in this case. *Sullivan*, 667 F.3d at 300.

Second, the Court finds that a class action settlement is a superior method for resolving this dispute fairly and effectively. Settlement avoids duplicative litigation, saving both plaintiffs and defendants significant time and legal costs to adjudicate common legal and factual issues. In addition, settlement is appropriate because individual recovery for these claims is likely too small to provide an incentive for individual class members to adjudicate individual claims. There is no indication that similar litigation is currently pending in another forum related to the same time period that would undermine the class certification requested by the Settling Parties. There are also no issues regarding interclass conflicts or disparate compensation methods as all class members will receive pro rata distribution of the Settlement Fund. Thus, given that the class members' claims arise out of the same series of events, the Court finds that conducting the class action settlement in this forum would achieve economies of time, effort, and expense, and promote uniformity of decision to similarly situated persons. Fed. R. Civ. P. 23(b)(3)(C); *Cordes*, 502 F.3d at 104. Therefore, because the class members appear to be identifiable, will receive the same relief, and have claims that present common questions of fact and law, the Court finds that class certification is appropriate because the class questions predominate over individual questions and the settlement class is a superior method of resolving this litigation. *Amchem*, 521 U.S. at 623.

### G.   Consideration of Rule 23(e) Factors

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In this process, "trial judges bear the important responsibility of protecting absent class members," and must be "assur[ed] that the settlement represents adequate compensation for the release of the class claims."  *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem*, 521 U.S. at 623 (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise") (citations omitted).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter*, 314 F.3d at 1188.  If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535 (applying an "initial presumption of fairness" to a proposed settlement where: (1) it is the result of arm's length negotiations; (2) it is based on sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected).

It is unclear to what extent a court on a motion for preliminary approval of a proposed class settlement must delve into these factors.  Based on the limited information available to the Court at this stage, the Court notes the following information, which weighs in favor of preliminary approval.  The Settling Parties reached a settlement agreement after several months of mediation with the Tenth Circuit Mediator and Judge Phillips, Docket No. 195 at 7, and there does not appear to be evidence that the Settlement Agreement was the result of a collusive agreement between the parties.  *Id.*  National Roofing questions the fairness of the Settlement Agreement and contends that the timing of the Settlement Agreement raises doubts about whether it is in the best interest of class members.  Docket No. 197 at 3. Although the Court should not lower the structural requirements of Rule 23 based on the timing of the settlement, *Ortiz*, 527 U.S. at 863, National Roofing has provided no reason for the Court to conclude that the terms of the Settlement Agreement were not fairly and honestly negotiated.  *Cf. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 634 (6th Cir. 2007) (noting that objectors need to establish more than timing to indicate that the settlement was induced by collusion).  The Settling Parties reached an agreement before a hearing took place in front of the Tenth Circuit; however, it appears they had engaged in extensive negotiations and mediation sessions for over a year.  Docket No. 195 at 7. Moreover, the Settling Parties reached an agreement long after they completed appellate briefing, indicating an intent to fully litigate the issues on appeal.  By contrast, other than drawing an inference of impropriety based solely on the timing of the Settlement Agreement, National Roofing does not suggest evidence of collusion.

24

Weighing evidence regarding the timing of the settlement against evidence showing months of mediation, the Court is satisfied that the Settling Parties appear to have reached an agreement only after fair consideration of the strengths and  weaknesses of their respective claims.  Accordingly, this factor weighs in favor of granting preliminary approval.

As to the second factor, the Settlement Agreement seems to have been negotiated against the backdrop of each party's likelihood of success on appeal. Assuming plaintiffs were successful on appeal, there was nevertheless a risk that they would be unable to establish the required elements of their §10(b) claims, including that the alleged misstatements were materially false and misleading, that defendants acted with scienter, and that the alleged misstatements caused their damages.  Docket No. 195 at 8.  Plaintiffs also had to consider their likelihood of success certifying a relevant class, surviving summary judgment, and winning at trial.  *Id.* at 7.  In addition, plaintiffs state that they considered the risk that defendants would be unable to pay a larger award after trial and entry of a judgment.  *Id.* at 8-9.  Given the uncertainty surrounding the outcomes of the upcoming legal battles for both sides, the Court finds that the Settling Parties have sufficiently shown for purposes of this preliminary approval that there were questions of law and fact that raised doubts about the class' ability to recover should the litigation continue to trial.  National Roofing presents no argument on this issue.  Accordingly, the Court finds that this factor weighs in favor of granting preliminary approval.

Next, the Court must determine whether the value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.

As discussed above, the Settlement Class would receive a cash payment of $10,000,000.00 based on a pro rata distribution of the Settlement Amount with an anticipated recovery of $0.13 per share of common stock purchased during the Class Period.  National Roofing does not directly address whether recovery of $0.13 per share is inadequate for absent class members.  Moreover, although National Roofing argues that recovery of $6.4 million is insufficient for the Settlement Class, Docket No. 197 at 4-5, it presents no evidence showing that the Sanchez Group could have negotiated a higher Settlement Amount or that the class could secure a larger award after extensive litigation.  Given the uncertainty of plaintiffs' likelihood of success on the merits and the prospects of prolonged litigation, the Court finds that immediate recovery outweighs the time and costs inherent in complex securities litigation, especially when the prospect is some recovery versus no recovery.  *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) (noting that it is "beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members.") (quotation marks omitted).  Accordingly, the Court finds this factor weighs in favor of granting preliminary approval.

With regard to the fourth factor, it is evident that the Settling Parties believe that the Settlement Agreement is fair and reasonable.  The plaintiffs in this case are represented by experienced counsel who have extensive experience in litigating such matters.  Moreover, the settlement was the result of arms length negotiations and was reached with the aid of experienced mediators.

Certifying the Settlement Class will allow the Court to determine whether there are other members of the class that challenge the fairness of the parties' proposed

Settlement Agreement.  Should National Roofing find the terms of the Settlement

Agreement unfair, it may choose not to join the settlement and litigate independently or

remain in the case and file objections to the settlement detailing why the proposed

settlement is unfair under the Rule 23 factors.  *Cf. Grilli v. Metro. Life Ins. Co., Inc.*, 78

F.3d 1533, 1536-38 (11th Cir. 1996) (district court did not abuse discretion in denying

motion to intervene, based on the court's conclusion that proposed intervenors could

protect their interest either by opting out of the class and litigating separately, or by

remaining in the case and, if they thought the proposed settlement was unfair, objecting

to it).  The Court finds that the presumption of fairness is sufficient to preliminarily

approve the terms of the proposed partial Settlement Agreement.

## IV.  NOTICE TO THE SETTLEMENT CLASS

Under Rule 23(e)(1), a district court approving a class action settlement "must

direct notice in a reasonable manner to all class members who would be bound by the

proposal."  Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2)(B) provides, in relevant part, that for

"any class certified under Rule 23(b)(3), the court must direct to class members the best

notice that is practicable under the circumstances, including individual notice to all

members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

In addition to the requirements of Rule 23, the Due Process Clause also guarantees

unnamed class members the right to notice of a settlement.  *DeJulius v. New England*

*Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005).  However,

due process does not require that each class member receive actual notice to be bound

by the adjudication of a representative action.  *Id.*  Instead, the procedural rights of

absent class members are satisfied so long as "the best notice practicable [is given]

27

under the circumstances including individual notice to all members who can be identified

through reasonable effort." *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1110

(10th Cir. 2001) ("*In re Integra I*") (citation omitted).   Thus, the legal standards for

satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process

are coextensive and substantially similar.   *DeJulius*, 429 F.3d at 944.

The proposed notice in this case provides potential class members with

information regarding the anticipated recovery under the partial Settlement Agreement,

the outcome of the case without a settlement, the agreement on the amount of

damages, reasons for the settlement, the amount of attorneys' fees or costs sought, and

a summary of the plan of allocation.   *See* Docket No. 194-1; 15 U.S.C. § 78u-4(a)(7);

Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).   The Settling Parties will provide notice by first class

mail to members of the Settlement Class that may be identified through reasonable

efforts.   Docket No. 195 at 11.   The Settling Parties indicate that they will attempt to

locate Settlement Class members by using record holder data produced by Crocs'

transfer agent and request that broker-dealers provide data about the last known names

and addresses of potential Settlement Class members and other shareholders who held

their shares in "street-name" only.[14]   Docket No. 195 at 11.   In addition, the Settling

Parties will post a Summary Notice, Docket No. 194-3, at three different times before

---

[14]The practice of registering securities in the records of issuers in a name other than the name of the beneficial owner is commonly referred to as "nominee" and "street" name registration.   Street name registration, a specialized type of nominee name registration, refers to the practice of a broker registering in its name, or in the name of its nominee, securities left with it by customers or held by it for its own account.   *See DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 939-40 (10th Cir. 2005).

the fairness hearing by press releases issued over leading business oriented newswires.  Docket No. 195 at 11; *see* 15 U.S.C. § 78u-4(a)(7).  Based on the foregoing, the Court is satisfied that the Settling Parties' proposed notice is reasonably calculated to apprise the absent class members of the action.  *In re Integra*, 262 F.3d at 1111.

## V.  CONCLUSION

Accordingly, it is

**ORDERED** that Plaintiffs' Motion for Preliminary Approval of Proposed Partial Class Settlement [Docket No. 195] is **GRANTED**.  The Court will issue a separate order setting the date of the fairness hearing and establishing the procedures leading up to the fairness hearing.

DATED August 28, 2013.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge