IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 07-cv-02351-PAB-KLM
(Consolidated with 07-cv-02412; 07-cv-02454; 07-cv-02465; and 07-cv-02469)

In re Crocs, Inc. Securities Litigation

---

## ORDER

---

This matter is before the Court on the Motion in Support of Plaintiffs' Request for an Award of Attorneys' Fees and Reimbursement of Expenses [Docket No. 207] filed by Plaintiffs.[1]  This Court has subject matter jurisdiction pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa *et seq.*, and 28 U.S.C. § 1331.

## I. BACKGROUND

Concurrently with this order, the Court is entering an order granting Plaintiffs' Motion for Final Approval of the Proposed Partial Settlement, Plan of Allocation, and Final Certification of Settlement Class [Docket No. 206].  The facts of this case have been set forth at length and will not be restated here except as relevant to resolving the instant motion.  *See generally* Docket No. 204; Docket No. 221.  On October 25, 2013, plaintiffs filed the instant motion and request that the Court (1) award Plaintiffs' Counsel attorneys' fees in the amount of 30% of the Settlement Fund ($3,000,000), (2) order the payment of $122,592.43 to Plaintiffs' Counsel as reimbursement for expenses incurred

---

[1]Terms used in this order have the meaning set forth in the parties' Stipulation and Agreement of Partial Class Settlement [Docket No. 194] unless otherwise indicated.

in the prosecution of this case, and (3) order the payment of $551,555.74 to the Claims

Administrator, the Garden City Group ("Garden City"), as reimbursement for expenses

incurred in administering the Settlement and Notice.  Docket No. 207 at 2, 15; Docket

No. 213 at 7.  No class members have objected to plaintiffs' requests.

## II.  FEE AWARD

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the "[t]otal

attorneys' fees and expenses awarded by the court to counsel for the plaintiff class

shall not exceed a reasonable percentage of the amount of any damages and

prejudgment interest actually paid to the class."  15 U.S.C. § 78u-4(a)(6).  In common

fund cases, the Tenth Circuit has "recognized the propriety of awarding attorneys' fees

. . . on a percentage of the fund, rather than lodestar, basis."[2]  *Uselton v. Commercial*

*Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993); *accord Gottlieb v. Barry*,

43 F.3d 474, 483 (10th Cir. 1994) (holding that, although either method is permissible in

common fund cases, "*Uselton* implies a preference for the percentage of the fund

method").  Because this is a common fund case and because plaintiffs' fee request is

for a percentage of the common fund, the Court will calculate the attorneys' fees award

using the percentage of the fund approach.  *See Brown v. Phillips Petroleum Co.*, 838

F.2d 451, 454 (10th Cir. 1988) (distinguishing common fund and statutory fees cases).

---

[2]The lodestar amount is calculated based upon "the total number of hours
reasonably expended multiplied by a reasonable hourly rate – and then adjust[ing] the
lodestar upward or downward to account for the particularities of the suit and its
outcome."  *Zinna v. Congrove*, 680 F.3d 1236, 1239, 1242 (10th Cir. 2012) (quotation
marks omitted).

The "percentage reflected in a common fund award must be reasonable [and] the district court must 'articulate specific reasons for fee awards.'" *Brown*, 838 F.2d at 454 (quoting *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983). In determining the reasonableness of a percentage award, courts must apply the *Johnson* factors, which are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee-this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 454-55 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974); *see also Gottlieb*, 43 F.3d at 483. "[R]arely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation." *Brown*, 838 F.2d at 455-56 ("The court here clearly considered all of the relevant *Johnson* factors and applied them appropriately."). Thus, in evaluating the reasonableness of a fee award, a court need not specifically address each *Johnson* factor. *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998).

### A.  Time and Labor Involved

Plaintiffs' Counsel submits that 3,877.45 hours have been spent litigating this case, which, based upon the attorneys' current rates, have a billable value of $2,436,025.75. Docket No. 208 at 46-47, ¶ 180. Counsel represents that the f actual investigation in this case focused on identifying former employees, consultants,

independent contractors and temporary employees of Crocs and interviewing others with personal knowledge of the events that gave rise to plaintiffs' claims.  Docket No. 208 at 7, ¶ 28.  The difficulty of gathering such facts is apparent, especially where, as Plaintiffs' Counsel represented at the fairness hearing, counsels' contact with current Crocs employees was restricted.  Nonetheless, counsel marshaled sufficient facts to prepare a 176-page amended complaint.  *See* Docket No. 87.  Moreover, the complexity of the legal issues involved further justifies the time spent litigating this case. Counsel engaged in extensive motions practice, including defending, albeit unsuccessfully, against defendants' motions to dismiss.  Counsel also completed briefing on plaintiffs' appeal to the Tenth Circuit.  Negotiating a settlement in this case took place over the course of several months, during which time counsel participated in negotiations between the Settling Parties, attended mediation sessions, and prepared a mediation statement, which involved consulting with accounting and damages experts. Docket No. 208 at 26-27.  Counsel also expended time drafting the necessary settlement documents and preparing the necessary motions to facilitate preliminary and final approval of the Settlement.  Plaintiffs represent that counsel will be required to expend additional time overseeing administration of the Settlement and distribution of the Settlement Fund.  Docket No. 207 at 6.  Counsel undertook these efforts on a contingent basis with no guarantee of compensation.  Docket No. 208 at 94-95, ¶ 5. The Court concludes that the time and labor expended by counsel was appropriate given the nature of the case and finds that this factor supports the requested award.

### B.  Novelty and Difficulty of the Questions Presented

Litigating an action under the PSLRA is not a simple undertaking, especially

4

given the specificity required to plead such claims.  *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1149 (D. Colo. 2009) ("There are few simple class action cases involving securities law.  This area of law may not be novel, but it generally is complex and difficult.").  This is evidenced by the filings in this case, including the aforementioned 176-page amended complaint and the Court's 65-page order granting defendants' motion to dismiss.  *See* Docket No. 167.  The difficulty in litigating this case is apparent and weighs in favor of the requested award.

### C.  Skill Requisite to Perform the Legal Service Properly and Quality of Plaintiffs' Counsel

The third and ninth *Johnson* factors are closely related and often considered together.  *See In re Qwest*, 625 F. Supp. 2d at 1150.  Given the complexity of this case, the Court concludes that the skill required to prosecute it was substantial.  Plaintiffs' Lead Counsel specializes in complex class actions and federal securities law and has served as lead or co-lead counsel in 18 federal securities class actions.  Docket No. 208 at 100-01.  Plaintiffs' Lead Counsel has recovered multiple awards of more than $75 million while serving as lead or co-lead counsel for class action plaintiffs.  Docket No. 208 at 102.  Additional counsel from the law firm of Zuckerman Spaeder LLP, although not specialists in federal securities litigation to the same extent, are litigators with significant experience in complex litigation.  Docket No. 208 at 124, 129, 136. Attorneys for Wolf, Slatkin & Madison, P.C., a firm serving as liaison counsel, each have more than a decade of litigation experience.  Docket No. 208 at 149, 154, 158. Plaintiffs' Counsel's filings in this case were commensurate with such experience. Moreover, defendants' counsel is equally skilled, which required Plaintiffs' Counsel to

expend significant effort and skill defending plaintiffs' claims.  The Court also finds that Plaintiffs' Lead Counsel's knowledge and skill "significantly contributed to a fair and reasonable settlement."  *Lane v. Page*, 862 F. Supp. 2d 1182, 1254 (D.N.M. 2012).  The skill required to maintain this action and the quality of Plaintiffs' Counsel weighs in favor of the requested award.

### D.  Preclusion of Other Employment

This factor is often afforded little weight.  *See In re Qwest*, 625 F. Supp. 2d at 1150; *Lane*, 862 F. Supp. 2d at 1254.  Although Plaintiffs' Counsel does not provide specific examples of work they were forced to decline during the pendency of this action, common sense indicates that the nearly 3900 hours spent litigating this case came at the expense of time that could have been devoted to other matters.  This factor weighs in favor of the requested award, although the Court assigns it less weight.

### E.  Customary Fee and Awards in Similar Cases

The Court considers factors five and twelve together.  First, plaintiffs argue that courts in this and other circuits routinely award fees of approximately 30% of the common fund.  Docket No. 207 at 3.  Courts in the Tenth Circuit have noted that the typical fee award in complex cases is around one third of the common fund.  *See Lucken Family Ltd. P'ship, LLLP v. Ultra Resources, Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class"); *Cox v. Sprint Commc'ns Co. L.P.*, 2012 WL 5512381, at *3 (D. Kan. Nov. 14, 2012) (collecting cases);  *Robles v. Brake Masters*

*Systems, Inc.*, 2011 WL 9717448, at *19 (D.N.M. Jan 31, 2011) (collecting cases noting that range of fee awards in complex, collective actions is between 25-40% of any amount recovered). However, courts are not unwilling to approve awards of a lesser percentage. *See, e.g.*, *In re Qwest*, 625 F. Supp. 2d at 1154 (approving fee award of 15% of settlement fund); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (awarding fees and expenses totaling 16% of the benefit conferred on the plaintiff class members); *Gottlieb*, 43 F.3d at 487 (holding that 22.5% is "well within the range of permissible reasonable fee awards"). Although the range of awards by percentage of total recovery is somewhat relevant to determining the reasonableness of the fee in this case, such a comparison fails to account for the numerous "variables that bear on the 'similarity' of the cases." *See In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *31 (D.N.J. Oct. 1, 2013). Accordingly, the Court does not give great weight to the percentages awarded in other cases.

Plaintiff argues that the requested award is reasonable when compared to the lodestar amount. Docket No. 207 at 4. Courts using the percentage method will often cross check the requested award with the lodestar amount. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (holding that the lodestar amount "remains useful as a baseline even if the percentage method is eventually chosen.").[3] Plaintiffs' Counsel

---

[3]Although the Tenth Circuit has not explicitly approved the practice, courts have found that either method of fee calculation "may be cross checked against the amount that counsel normally would have recovered on any other reasonable basis." *See Ashley v. Regional Transp. Dist. & Amalgamated Transit Union Div. 1001 Pension Fund Trust*, No. 05-cv-01567-WYD-BNB, 2008 WL 384579, at *8 (D. Colo. Feb. 11, 2008).

submits that 3,877.45 hours have been spent litigating this case and that the lodestar amount is $2,436,025.75.  Docket No. 208 at 46-47, ¶ 180.  Based upon the complexity and length of this case, the Court finds that the number of hours expended appears reasonable for purposes of this comparison.[4]  *See Been v. O.K. Indus., Inc.*, 2011 WL 4478766, at *7 (E.D. Okla. Aug. 16, 2011) (noting that counsel in a contingent fee action has little incentive to work more hours than necessary).  A thorough analysis of hourly rates charged by the attorneys who worked on this case would likely reveal that the claimed rates are, in some instances, higher than the rates charged by attorneys of similar skill and experience in the Denver legal market.  *See* Docket No. 208 at 97, 119, 144.  However, even if some of the claimed rates are high, the requested fee of $3 million is a 1.23 multiple of the lodestar and well below what courts in this District typically award in collective actions.  *See Mishkin v. Zynex, Inc.*, No. 09-cv-00780, 2012 WL 4069295, at *2 (D. Colo. Sep. 14, 2012) (collecting District of Colorado cases approving multipliers ranging from 2.5% to 4.6%).  Thus, the Court concludes that the lodestar cross check supports the requested fee award.  *See Cox*, 2012 WL 5512381, at *3 ("it is apparent that the Kansas fee-and-expense request is amply supported by a lodestar crosscheck").

---

[4]Because the Court has adopted the percentage method, the lodestar calculation is used only for comparison purposes.  *See Gottlieb*, 43 F.3d at 483 (holding either lodestar or percentage method permissible in common fund cases).  Thus, the Court will not undertake an exhaustive lodestar analysis.  *See In re Rite Aid*, 396 F.3d at 306-307 ("[The] lodestar cross-check calculation need entail neither mathematical precision nor bean-counting.  The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.").

**F.  Prearranged Fee**

A contingent fee arrangement often weighs in favor of a greater fee because "[s]uch a large investment of money [and time] place[s] incredible burdens upon law practices."  *In re Thornburg Mortg. Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012) (quotations omitted).  "A contingent fee, and the potential for a relatively high fee, is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful."  *In re Qwest*, 625 F. Supp. 2d at 1151.  Here, Plaintiffs' Counsel was not compensated while prosecuting this action.  Counsel invested significant time and money with the substantial risk that the litigation would be unsuccessful.  After the Court dismissed plaintiffs' amended complaint, Plaintiffs' Counsel appealed to the Tenth Circuit despite the risk that the Court's decision would be affirmed.  The Court finds that this factor weighs in favor of the requested award.

**G.  Amount Involved and the Results Obtained**

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained."  *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quotations omitted).  Here, Plaintiffs' Counsel was able to recover $10 million for the Settlement Class.  By plaintiffs' estimation, this represents "an approximate 1.3% recovery to Class members based on Plaintiffs' best possible result in the Action and a 100% claims rate."  Docket No. 207 at 10.  There is little evidence to suggest that Plaintiffs' Counsel could have negotiated a higher Settlement Amount or that the class could secure a larger award after extensive litigation.  According to plaintiffs, the settlement is in line with the

median ratio of settlement size to investor losses according to a recent survey of securities class action settlements.  Docket No. 208 at 34. (citing Dr. Jordan Milev et al., *Recent Trends in Securities Class Action Settlements: 2011 Year – End Review* 17, 23 (NERA Econ. Consulting 2011)).  The result obtained by Plaintiffs' Counsel must be considered in light of the distinct possibility that the Tenth Circuit would have affirmed the dismissal of plaintiffs' amended complaint.  The fact that Plaintiffs' Counsel was able to achieve any favorable result, given the pendency of the Tenth Circuit's decision, is a strong indication that the requested fee is reasonable.  Moreover, even if the Tenth Circuit ruled in Plaintiffs' favor, plaintiffs were not guaranteed to prevail at summary judgment, trial, or on any post-judgment appeals.  Even if plaintiffs succeeded at every stage of litigation, an award would likely take several years to reach class members. The Court concludes that this factor weighs heavily in favor of the requested award.

### H.  Undesirability of the Case

Federal securities class actions require plaintiffs' counsel to expend substantial time and effort with no guarantee of success.  *See In re Thornburg*, 912 F. Supp. 2d at 1258-59; *In re Qwest*, 625 F. Supp. 2d at 1152.  In light of these difficulties, "public policy supports granting attorneys fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC."  *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 236 (S.D.N.Y. 2005); *see also Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (emphasizing that private securities actions are a "'most effective weapon in the enforcement' of the securities laws" (quoting *J.I. Case Co v. Borak*, 377 U.S. 426, 432 (1964)).  Plaintiffs'

Counsel's efforts in prosecuting this case and the risks undertaken have been discussed at length.  The risk that Plaintiffs' Counsel would recover no compensation for their extensive efforts was "not merely hypothetical," especially where, as here, Plaintiffs were subject to the PSLRA's heightened pleading standard and faced the immediate possibility of an adverse decision by the Tenth Circuit.  *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).  The Court concludes that this factor weighs in favor of the requested award.[5]

## I.  Additional Considerations

The Notice informed class members that Plaintiffs' Counsel intended to apply for an award of attorneys' fees not to exceed one-third of the Settlement Amount.  Docket No. 208 at 72.  Plaintiffs' Counsel's request for 30% of the Settlement Amount is therefore less than what Plaintiffs' Counsel was otherwise entitled to request.  In light of this, the fact that none of the class members objected to the requested attorneys' fees is significant and weighs in favor of the requested award.[6]  *Anderson v. Merit Energy Co.*, No. 07-cv-00916-LTB-BNB, 2009 WL 3378526, at *4 (D. Colo. Oct. 20, 2009) ("The absence of any Class members' objection is an additional factor that supports this Court's approval of the requested attorneys' fees.").

The Court finds that the relevant *Johnson* factors indicate that 30% of the

---

[5]The Court finds that the remaining factors, time limitation imposed by the client or the circumstances and the nature and length of the professional relationship with the client, are inapplicable.  *See Gudenkauf*, 158 F.3d at 1083.

[6]Plaintiffs' Counsel filed their motion for attorneys' fees one month prior to the objection deadline, thus giving potential class members "an adequate opportunity to object to the motion itself."  *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (citing Fed. R. Civ. P. 23(h)).

Settlement Amount, or $3,000,000.00, reflects a reasonable fee award.  *See* 15 U.S.C.

§ 78u-4(a)(6).  The Court will grant Plaintiffs' Counsel's request for attorneys' fees.

## III.  EXPENSES

### A.  Plaintiffs' Counsel

The PSLRA also contemplates compensating class counsel for expenses

incurred in prosecuting a class action.  15 U.S.C. § 78u-4(a)(6).  "[A]n attorney who has

created a common fund for the benefit of the class is entitled to reimbursement of . . .

*reasonable* litigation expenses from that fund."  *In re Gen. Instrument Sec. Litig.*, 209 F.

Supp. 2d 423, 434 (E.D. Pa. 2001) (quotation marks omitted, emphasis original).

Expenses "'that are normally itemized and billed in addition to the hourly rate should be

included in fee allowances . . . if reasonable in amount.'"  *Bee v. Greaves*, 910 F.2d

686, 690 (10th Cir. 1990) (quoting *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir.

1983)).

The law firms involved in this case have submitted an itemized breakdown of the

respective expenses each firm incurred in connection with this case.  Docket No. 208 at

97, 121, 145.  Fees for computer research, investigation, and experts/consultants

appear to be among the largest expenditures, which, given the nature of this case, is an

appropriate use of resources.  Plaintiffs' Counsel requests less than half of the

$250,000 prospectively requested in the Notice.  Docket No. 208 at 65.  Despite having

nearly a month to review the request prior to the deadline for objections, no class

members have objected to the requested expenses.  Although the expenses are not

itemized or explained in great detail, the Court is satisfied that the expenses are

reasonable, given the issues presented and duration of this case, and are of the type

normally billed to clients.  *See In re Qwest*, 625 F. Supp. 2d at 1155 (awarding lead

counsel $113,262.04 in expenses in securities class action).  The Court will award

Plaintiffs' Counsel $122,592.43 for expenses incurred in the prosecution of this action,

to be distributed in accordance with the Stipulation.

### B.  Claims Administrator

Plaintiffs request that, as provided in the Stipulation, the Court order the payment

from the Settlement Fund of $551,555.74 to Garden City as reimbursement for costs

incurred in administering the settlement.  Docket No. 213 at 7; *see also* Docket No. 208

at 56, ¶¶ 208-09.  The itemized expenses include printing and dissemination of the

Notice, document management and storage, time spent on claim validation, and

contact services, such as communication with class members.  Docket No. 213 at 7.

Although the cost of printing and mailing approximately 300,000 Claim Packets is

substantial, there is no indication that such expenses could have been avoided.[7]  The

Notice informed class members that Plaintiffs' Counsel would request reimbursement

on behalf of the Claims Administrator from the Settlement Fund for expenses

associated with administering the settlement.  Docket No. 208 at 72.  As noted earlier,

no class member has objected to the requested reimbursement.  The Court has

reviewed the reimbursement request and finds that it reflects reasonable expenses for

administering the Settlement in this case.  *See Bee*, 910 F.2d at 690; *RMED Int'l, Inc. v.*

---

[7]Other courts have noted that although the Garden City Group's rates may not
be the lowest among claims administrators, "they are reasonable and justified by the
quality of the work."  *See In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *4
n.19 (E.D.N.Y. Sep. 18, 2007).

*Sloan's Supermarkets, Inc.*, 2003 WL 22251323, at *2 (S.D.N.Y. Sep. 30, 2003) (approving payment from settlement fund to claims administrator).  The Court will order the payment of $551,555.74 to the Claims Administrator, to be distributed in accordance with the Stipulation.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Motion in Support of Plaintiffs' Request for an Award of Attorneys' Fees and Reimbursement of Expenses [Docket No. 207] is **GRANTED**.  The Court will issue a separate order setting forth the award of attorneys' fees and reimbursement of expenses in accordance with the Stipulation.

DATED September 18, 2014.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge